### UNITED STATE DISTRICT COURT
### SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

| | | |
|---|---|---|
| **DEVIN BUTTS** | : | Case No. 3:25-cv-00353 |
| | : | |
| and | : | |
| | : | |
| **AUSTIN BAKER** | : | |
| | : | |
| and | : | |
| | : | |
| **DAVID PAUL** | : | |
| | : | |
| and | : | |
| | : | |
| **IAN BLOUCH** | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| vs. | : | |
| | : | |
| **NORTHMONT CITY SCHOOLS** | : | **COMPLAINT WITH** |
| **BOARD OF EDUCATION** | : | **JURY DEMAND** |
| | : | |
| and | : | |
| | : | |
| **ANTHONY THOMAS** | : | |
| | : | |
| and | : | |
| | : | |
| **SARAH ZATIK** | : | |
| | : | |
| and | : | |
| | : | |
| **MATTHEW ROBERT HUNT** | : | |
| | : | |
| and | : | |
| | : | |
| **EMPLOYEE DOES I-V** | : | |
| | : | |
| Defendants. | : | |

Plaintiffs Devin Butts, Austin Baker, David Paul, and Ian Blouch, by and through their counsel, for their Complaint against Defendants Northmont City Schools Board of Education ("Northmont City Schools" or "Northmont"), Sarah Zatik, Anthony Thomas, Matthew Robert Hunt, and Employee Does I-V, state and allege as follows:

## PRELIMINARY STATEMENT AND INTRODUCTION

1.      On May 5, 2025, law enforcement arrested Matthew Robert Hunt while he was driving a bus for Northmont City Schools. On July 30, 2025, a Montgomery County Grand Jury indicted Hunt on 82 criminal counts: 17 counts of Rape (each with Sexual Violence Predator specifications), 39 counts of Sexual Battery by coercion, 25 counts of Sexual Battery by a person in authority, and one count of Unlawful Sexual Conduct with a Minor.

2.      These charges stem from Hunt's systematic sexual abuse of students he met through his position as a Northmont school bus driver—a position he held for thirteen years despite a documented history of inappropriate conduct with minors while working in other school districts before being hiring by Northmont. Plaintiffs Devin Butts, Austin Baker, David Paul, and Ian Blouch are former Northmont students whom Hunt groomed and sexually assaulted between 2013 and 2025.

3.      When Superintendent Sarah Zatik hired Hunt in 2012, she failed to review his personnel file from Vandalia-Butler City Schools documenting his forced resignation in 2009 for inappropriate sexual conduct with students. Nor did she review Hunt's personnel file from Eaton Community Schools (Preble County, Ohio), which contains a handwritten letter dated July 2011 stating that a union president reported that "Matt [Hunt] was having a sexually explicit relationship with a fourteen-year-old boy."

4.      Throughout his employment, administrators and other employees observed

2

warning signs but failed to investigate, act, or report. On October 23, 2021, Superintendent Anthony Thomas received a detailed email explicitly describing Hunt's pattern of grooming students. Thomas failed to investigate or remove Hunt from student contact. Just four days before his arrest, despite Northmont officials having actual knowledge of sexual abuse allegations, Hunt drugged and raped Plaintiff Devin Butts.

5.     Plaintiffs seek compensatory and punitive damages for violations of Title IX, 42 U.S.C. § 1983, Ohio Revised Code § 2151.421, and other state law claims, plus injunctive relief requiring comprehensive reforms.

**PARTIES**

6.     Plaintiff Devin Butts is an adult male resident of Englewood, Ohio, who attended Northmont High School from 2021 to 2025 and was sexually assaulted by Hunt starting in March 2025, including being drugged and raped on May 1, 2025.

7.     Plaintiff Austin Baker is an adult male resident of Englewood, Ohio, who attended Northmont High School from 2012 to 2016 and was sexually assaulted by Hunt beginning in November 2013.

8.     Plaintiff David Paul is an adult male resident of Cincinnati, Ohio, who attended Northmont High School from 2012 to 2016. He was first sexually assaulted by Hunt on November 21, 2014, with abuse continuing through 2017.

9.     Plaintiff Ian Blouch is an adult male resident of Englewood, Ohio, who attended Northmont High School from 2012 to 2016 and was sexually assaulted by Hunt on four occasions beginning in October 2013.

10.     Defendant Northmont City Schools Board of Education is the governing body of Northmont City School District, organized under Ohio Revised Code Chapter 3313. Northmont

3

receives federal funding and is subject to Title IX, 20 U.S.C. § 1681, *et seq*. Its principal office is located at 1150 W. National Road, Clayton, Ohio 45315.

11.     Defendant Dr. Sarah Zatik resides at Sandusky, Ohio, and served as Superintendent of Northmont from 2010 to 2016. She is sued in her individual capacity. As Superintendent, Zatik was an "appropriate person" under Title IX with authority on behalf of Northmont to make hiring decisions, conduct background investigations, implement protective policies, supervise employees, and institute corrective measures. Zatik made the decision to hire Hunt in 2012 and supervised him during the critical years when he established his pattern of abuse against three Plaintiffs. At all times relevant to this Complaint, Zatik acted under color of state law.

12.     Defendant Anthony Thomas is a resident of Ohio and is the current Superintendent of Northmont City Schools, hired in 2016. He is sued in his individual capacity. As Superintendent, Thomas is an "appropriate person" under Title IX with authority on behalf of Northmont to investigate employee misconduct, discipline or terminate employees, implement protective policies, and institute corrective measures. At all times relevant to this Complaint, Thomas acted under color of state law.

13.     Defendant Matthew Robert Hunt is currently incarcerated in the Montgomery County Jail in Dayton, Ohio. He was employed as a school bus driver by Northmont from 2012 until his arrest on May 5, 2025.

14.     Defendants Employee Does I-V are present or former employees of Northmont whose true identities Plaintiffs have not been able to discover by the exercise of due diligence prior to commencing this action, but whom Plaintiffs expect and intend to identify through discovery herein. They received telephone calls and/or other reports concerning the conduct of Defendant

Hunt that gave them reasonable cause to suspect that he posed a risk of injury to Northmont minor students, and upon information and belief, failed to report them as required by law.

## JURISDICTION AND VENUE

15. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343 (Title IX and § 1983 claims) and supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367(a).

16. Venue is proper pursuant to 28 U.S.C. § 1391(b)(1) and (2), as Defendants Northmont, Thomas and Hunt reside in this judicial district, and a substantial part of the events and omissions giving rise to Plaintiffs' claims against all Defendants occurred in this district.

## FACTUAL ALLEGATIONS

### A. Hunt's Employment History and Northmont's Negligent Hiring

17. Before Northmont hired Hunt in 2012, he worked as a school bus driver for multiple Ohio districts and schools, including Vandalia-Butler City Schools (2006-2009), Tri-County North Local Schools (2009-2014), and Eaton Community Schools (2009-2011); Milton Union Local Schools from 2010-2012; Miami Valley Career Technology Center in 2010; and St. Christopher Schools in 2011.

18. In November 2008, Vandalia-Butler warned Hunt to cease inappropriate contact with a student. He continued the contact and sent the student a letter discussing their close friendship.

19. On March 9, 2009, Vandalia-Butler placed a letter in Hunt's personnel file accusing him of insubordination, immoral conduct, failure to maintain order of students, neglect of duty, and inappropriate and sexually suggestive conversations with students. Hunt resigned eight days before his scheduled disciplinary hearing.

20. Hunt's Eaton Community Schools personnel file contains a July 2011 handwritten letter stating that a union president reported Hunt "was having a sexually explicit relationship with a fourteen-year-old boy."

21. When Zatik hired Hunt in 2012, Northmont and she personally failed to review his personnel files from previous employers, failed to contact previous employers about his departure or disciplinary issues, and failed to conduct adequate background checks beyond basic criminal history. Had minimal due diligence been performed, Northmont would have discovered Hunt's disqualifying history.

**B. Hunt's Pattern of Grooming and Abuse**

22. Beginning in 2013, Hunt systematically targeted students through his role as Northmont's marching band bus driver. He identified vulnerable minors, cultivated relationships of trust and dependency, offered them employment at his business (Hunt Pipe Organ Services, LLC, formerly known as Hunt-Krewson Pipe Organ Service, LLC), and used this pretense to isolate students and facilitate private contact outside school oversight. He then sexually assaulted students at various locations including his residences in Lewisburg and Brookville, Ohio, a camper in Lima, Ohio, various area churches, the Dayton Masonic Temple, and the Dayton Art Institute.

23. <u>Devin Butts</u>. Butts met Hunt as his bus driver in January 2025. In February 2025, Hunt recruited Butts to work for Hunt Pipe Organ Services. Hunt first sexually assaulted Butts in March 2025. On May 1, 2025, Hunt transported Butts to a campground in Lima, Ohio, drugged him, and raped him. On May 3, 2025, a Sexual Assault Nurse Examiner conducted a forensic examination documenting physical findings and evidence consistent with sexual assault.

24. <u>Austin Baker</u>. Baker met Hunt in August 2013 on Northmont's marching band bus. In November 2013, Hunt recruited Baker to work at Hunt Pipe Organ Services and began sexually

assaulting him almost daily, sometimes multiple times per day, throughout Baker's time at Northmont. Baker stayed overnight at Hunt's residences. Hunt provided Baker with gifts and money, creating dependence and control, and used threats and coercion to ensure compliance and silence.

25. <u>David Paul.</u> Paul met Hunt in September 2014 on the marching band bus and was recruited by Hunt to work at Hunt Pipe Organ Services. Hunt first sexually assaulted Paul on November 21, 2014, at the Dayton Masonic Temple and continued assaulting him through 2017 using threats, coercion, and his position of authority.

26. <u>Ian Blouch</u>. Blouch met Hunt in September 2013 on the marching band bus. In October 2013, Hunt recruited Blouch to work at Hunt Pipe Organ Services and sexually assaulted him on four separate occasions starting in 2013.

**C. Observable Warning Signs and Zatik's Failures (2012-2016)**

27. During Zatik's superintendency, Hunt engaged in observable conduct that should have prompted immediate investigation: offering private employment to students, having them stay overnight at his residences, developing unusually close relationships beyond his duties, providing gifts and money, and meeting students after hours at the Northmont Service Center, located at 7277 Hoke Rd, Clayton, Ohio 45315. This was the "bus barn" or depot where school buses are parked when not in use. Students parked their personal vehicles on this property to meet with Hunt without any legitimate school purpose. Other Northmont transportation employees directly observed these after-hours meetings on school property.

28. The Northmont Transportation Supervisor knew Hunt employed students, including Plaintiff Austin Baker, at his private business, yet failed to investigate this inappropriate relationship. Instead, she used Hunt's student employees, including Baker, to perform work at her

personal residence. These actions reflect that Northmont administrators were aware of Hunt's practice of privately employing students and permitted it to continue without intervention.

29.     Northmont permitted Hunt to control bus seating assignments and route scheduling without administrative oversight. Hunt used this authority to assign seats that positioned targeted students near him and to manipulate routes so that specific students, including his victims, rode his bus. Northmont failed to require approval or documentation for seating or route changes and failed to monitor whether drivers were using this discretion to facilitate inappropriate relationships with students.

30.     Hunt exercised control over key-card access to the Northmont Service Center, allowing entry during and after regular school hours. Northmont permitted Hunt to authorize student access, including that of Plaintiffs, without supervision, documentation, or oversight. Hunt exploited this authority to facilitate unsupervised, after-hours encounters with students he was grooming, including Plaintiffs.

31.     In 2016, Hunt placed an advertisement for Hunt Pipe Organ Services in the Northmont High School yearbook, publicly featuring photographs of himself with Plaintiffs Baker, Paul, and Blouch, students he privately employed and sexually abused. School administrators and staff reviewed or had access to the yearbook before publication, yet allowed the advertisement to appear despite its obvious impropriety. The inclusion of students' images in a school-sponsored publication promoting an employee's private enterprise further reflected Northmont's failure to recognize or address Hunt's boundary violations and its disregard for clear warning signs of grooming behavior.

32.     Zatik failed to implement basic protective policies during her tenure: policies prohibiting bus drivers from offering private employment to students, requiring parental

notification before employees engaged in outside employment with students, prohibiting overnight stays at employees' residences, supervising bus drivers' interactions beyond transportation duties, or training staff on appropriate boundaries and grooming behaviors. All three Plaintiffs who were abused during Zatik's tenure (Baker, Paul, and Blouch) were groomed as well as assaulted while she supervised the district.

### D. Northmont's Ongoing Facilitation of Hunt's Access to Students (2013–2025)

33.     From approximately 2013 through 2025, Northmont routinely released students, including Plaintiffs Baker and Butts, from class or other school activities during the school day under a "work permit" program under the pretense that they were performing "work" for Hunt's private business, Hunt Pipe Organ Services. These releases occurred over multiple school years and under successive administrations, and were approved or facilitated by Northmont personnel without documentation, supervision, or verification of the purpose or location of the work. During these unsupervised absences from school, Hunt sexually abused Plaintiffs.

### E. Reports to Northmont and Deliberate Indifference (2019-2025)

34.     In July 2019, Tucker Rother, a former Tri-County North student who had been contacted by Hunt in or around 2014, made a police report to Lewisburg Police. Throughout 2019 and 2020, Rother and his family members notified both Tri-County North and Northmont about Hunt's sexual abuse. Neither district took any action.

35.     In 2019, despite Hunt's documented history of inappropriate conduct with students at prior school districts, Northmont hired him as a teacher's aide, providing expanded access to students and school facilities. The hiring decision was made without reviewing his prior personnel or disciplinary files, conducting updated background investigations, or evaluating prior complaints. Northmont's decision to place Hunt in a student-facing role after years of observable

boundary violations and grooming behavior reflects continuing indifference to student safety and disregard for known risks of sexual abuse.

36.    On October 23, 2021, Tucker Rother emailed Superintendent Thomas at tthomas@northmontschools.net, detailing his personal experience with Hunt and expressing concern about Hunt's conduct behavior with students. Rother stated that he had been made aware that a Northmont bus driver had asked a crude sexual question of a fifteen year old boy. He stated that it was evident that Hunt was continuing the same pattern of behavior that Rother had experienced from Hunt over several years, beginning no later than 2014 when Rother was in high school and Hunt was his bus driver. Rother described how Hunt befriended him and had him over to his house to do some work, how Hunt sent him messages via social media that became more "vulgar and inappropriate" over time, and how Hunt attempted to manipulate Rother into "discussing inappropriate and sexual conversations." Rother specifically told Thomas that he was sharing this information so "[Y]ou can be informed about the people within your community and the safety of your kids" and because he couldn't "let anything like this happen to another kid."

37.    Despite this direct report from Rother of a clear pattern of grooming behavior with explicitly sexual content, giving reasonable cause to suspect that Hunt was targeting a fifteen year old minor at that time, Thomas failed to investigate, discipline, or remove Hunt from student contact and allowed him to continue performing the same duties and responsibilities that provided ongoing access to students until his arrest in 2025.

38.    Beginning in approximately December 2021, after Ian Blouch disclosed his abuse to her, Bonnie Hill called Northmont multiple times to report that Hunt was sexually assaulting and having inappropriate relationships with students. A Northmont employee dismissed these reports as "rumors" and "a police matter." In February and May 2024, Bonnie Hill again called

10

Northmont to report Hunt was raping and molesting students. Despite these calls spanning three years, Northmont failed to investigate, restrict Hunt's access to students, or report to law enforcement.

39.     On April 21, 2025, School Resource Officer Tom Hamlin called Plaintiff Baker and stated, "I heard what happened with you, and I am so sorry you went through all of that," confirming that Northmont officials had actual knowledge of Hunt's sexual abuse of Baker. On April 30, 2025, Hunt told Devin Butts that Officer "Hamlin is catching on." Despite this knowledge, Hunt was not removed or restricted.

40.     On May 1, 2025—while Northmont officials had actual knowledge of sexual abuse allegations—Hunt drugged and raped Devin Butts at a campground in Lima. On May 5, 2025, Hunt was arrested while driving a school bus. According to public reports, parents and students who had direct contact with Hunt were not notified of his arrest.

41.     Between October 2021 and May 2025, despite receiving multiple explicit reports from various sources that Hunt was sexually abusing students, Defendants took no meaningful action to investigate, remove Hunt from student contact, or report to authorities.

42.     Northmont's administrators were repeatedly confronted with clear evidence of Hunt's grooming and sexual misconduct yet responded with silence and inaction. Over more than a decade, the District's policies, omissions, and affirmative decisions created and perpetuated an environment in which Hunt's access to students was unrestricted and his abuse of Plaintiffs was foreseeable and preventable.

**COUNT 1**
**Violation of Title IX, 20 U.S.C. § 681, *et seq*.**
**(Against Northmont)**

43.     Plaintiffs incorporate all preceding allegations.

44.     Title IX prohibits discrimination on the basis of sex in any education program receiving federal financial assistance. 20 U.S.C. § 1681(a). Sexual harassment, including sexual assault, is discrimination for Title IX purposes. Northmont receives federal education funding and is subject to Title IX.

45.     Northmont, through its "appropriate persons" with authority to address discrimination and institute corrective measures—Superintendents Thomas (2016-present) and Zatik (2010-2016)—had actual knowledge of sexual harassment and responded with deliberate indifference.

### Actual Knowledge

46.     Thomas, as Northmont's Superintendent with Title IX authority, had actual knowledge of Hunt's sexual harassment no later than October 23, 2021, when he received Tucker Rother's detailed email.

47.     Northmont administrators received additional actual knowledge through Bonnie Hill's calls beginning in 2021, reports from Rother's family members in 2019-2020, and Officer Hamlin's April 2025 statement to Baker.

48.     Zatik, as Northmont's Superintendent with Title IX authority, had actual knowledge of substantial risks posed by hiring employees without adequate background checks and actual knowledge of observable warning signs on Northmont property during her tenure.

### Deliberate Indifference

49.     Despite this knowledge, Northmont's response was deliberately indifferent: Thomas failed to investigate or remove Hunt, or implement any supervision; Bonnie Hill's calls were dismissed as "rumors"; despite Officer Hamlin's April 2025 knowledge, Hunt continued driving buses for two more weeks; despite reports spanning six years, Northmont never

investigated, restricted Hunt's access; and Zatik hired Hunt without adequate background checks and failed to supervise or investigate observable warning signs at the Northmont Service Center. This response was clearly unreasonable in light of known circumstances.

### Severity and Denial of Educational Access

50.     Hunt's harassment was severe, pervasive, and objectively offensive. He drugged and raped Plaintiff Butts on May 1, 2025, just days before his arrest while Northmont officials had actual knowledge of abuse allegations. He repeatedly sexually assaulted each Plaintiff over periods spanning months to years. The harassment deprived Plaintiffs of equal access to educational opportunities, including their right to a safe learning environment.

51.     As a direct and proximate result, Plaintiffs have suffered compensable damages including severe psychological trauma, emotional distress, medical and therapeutic expenses, pain and suffering, and loss of educational opportunities, in amounts to be proven at trial.

**COUNT 2**
**Violation of 42 U.S.C. § 1983**
**(Against Northmont, Zatik, and Thomas)**

52.     Plaintiffs incorporate all preceding allegations.

53.     Northmont maintained a longstanding custom and practice of permitting employees to cultivate unsupervised relationships with students, to remove students from class for personal "work," and to disregard reports of boundary violations and grooming behavior. This entrenched practice, known to and tolerated by senior administrators, was the moving force behind Plaintiffs' injuries.

54.     Defendants are persons under 42 U.S.C. § 1983 who acted under color of state law. Plaintiffs have a clearly established liberty interest in bodily integrity and security protected by the Fourteenth Amendment's Due Process Clause.

55.     Defendants' policies, practices, and affirmative acts created or enhanced dangers to Plaintiffs: Zatik hired Hunt without conducting background investigations despite his documented history, granted him unrestricted access to vulnerable students, permitted him to use school facilities to meet students after hours without supervision, failed to implement policies restricting private employment or overnight stays with students, and created an environment where Hunt could openly groom students on district property without consequence. Despite receiving explicit reports of sexual abuse from October 2021 forward, Defendants affirmatively continued Hunt's employment with unrestricted student access, effectively placing students in danger by maintaining a known predator in a position of authority and trust.

56.     Zatik hired an employee with a documented history of sexual impropriety with minors without basic verification, then failed to investigate observable warning signs during her tenure. Thomas received explicit detailed reports of ongoing sexual abuse yet deliberately chose not to investigate, remove Hunt from student contact, or report to authorities, allowing Hunt to continue victimizing students for nearly four more years. These failures demonstrate conscience-shocking indifference to constitutional rights.

57.     Northmont is liable under § 1983 for maintaining policies, practices, and customs that violated Plaintiffs' constitutional rights, including: hiring employees without adequate background investigations beyond basic BCI checks; failing to review personnel files or contact previous employers for employees with student access; inadequate supervision of employees with access to vulnerable students; dismissing or failing to investigate reports of employee sexual misconduct; failing to train employees on mandatory reporting obligations under Ohio Revised Code § 2151.421; and failing to train employees on recognizing grooming behaviors and warning

signs of child sexual abuse. These policies were the moving force behind the constitutional violations and demonstrate deliberate indifference to Plaintiffs' constitutional rights.

58.     Zatik is not entitled to qualified immunity because the right to protection from foreseeable harm caused by inadequate hiring practices was clearly established in 2012. No reasonable official could believe that hiring an employee with a documented history of forced resignation for inappropriate sexual conduct with minors—without conducting basic background verification—and then failing to supervise that employee despite observable warning signs on school property, constituted lawful conduct. Zatik's conscience-shocking hiring decision and subsequent failures violated clearly-established constitutional rights.

59.     Thomas is not entitled to qualified immunity because the right to bodily integrity and protection from state-created danger was clearly established as of October 2021. No reasonable official could believe that receiving a detailed report of an employee grooming and sexually assaulting students, then failing to investigate, or removing the employee from student contact, constituted lawful conduct. Thomas's deliberate indifference after actual knowledge violated clearly established constitutional rights.

60.     As a direct and proximate result, Plaintiffs have suffered compensable damages in amounts to be proven at trial.

**COUNT 3**
**Negligent Hiring, Supervision, and Retention**
**(Against Northmont, Zatik, and Thomas)**

61.     Plaintiffs incorporate all preceding allegations.

62.     Ohio's political subdivision immunity under Ohio Revised Code § 2744.02 does not bar this claim because the negligent hiring, supervision, and retention of Hunt constituted

15

negligent performance of a proprietary function (operating a school transportation system), and therefore falls within the exception under Ohio Revised Code § 2744.02(B)(2).

63.     At all relevant times, Defendants had a duty to exercise reasonable care in hiring, supervising, and retaining Hunt to ensure students were reasonably safe from harm.

**Negligent Hiring (Northmont and Zatik individually)**

64.     In 2012, Zatik was directly responsible for hiring Hunt as a bus driver with unsupervised access to vulnerable students. Standard hiring practices for positions involving minors require criminal background checks through BCI, review of personnel files from previous employers, contact with previous employers to verify employment and inquire about disciplinary issues, and reference checks. Zatik negligently failed to ensure these standard procedures were followed. Had she done so, Northmont would have discovered Hunt's forced resignation from Vandalia-Butler for inappropriate contact with a student, the March 9, 2009 letter accusing him of immoral conduct and sexually suggestive conversations with students, and the July 2011 letter alleging he was having a sexually explicit relationship with a fourteen-year-old boy. This information was readily available through basic employment verification. Zatik's negligent hiring directly enabled Hunt to access and victimize Plaintiffs Baker, Paul, and Blouch.

65.     Northmont is directly liable for the negligent hiring of Hunt to the extent that it failed to enact appropriate policies requiring observance of proper hiring practices necessary to ensure student safety, and vicariously liable as the employer of Zatik for her negligent conduct.

**Negligent Supervision (Northmont and Zatik individually – 2012-2016)**

66.     After hiring Hunt, Zatik negligently failed to supervise him despite observable warning signs: students meeting him after hours at the Service Center with their vehicles parked on school property; Hunt offering private employment to multiple students; unusually close

relationships beyond his duties; students staying overnight at his residences; and Hunt providing students with gifts and money. Despite these warning signs, many of which were observable on school property, Zatik failed to investigate, question Hunt, implement monitoring, restrict his use of facilities, or establish policies prohibiting private employment of students. This failure enabled Hunt to repeatedly assault Plaintiffs Baker, Paul, and Blouch during her tenure.

67.     Northmont is directly liable for the negligent supervision of Hunt to the extent that it failed to enact appropriate policies requiring observance of proper employment practices necessary to ensure student safety, and vicariously liable as the employer of Zatik for her negligent conduct.

**Negligent Retention (Northmont and Thomas individually – 2016-2025)**

68.     After Zatik's departure, Thomas negligently retained Hunt from 2016 through May 5, 2025, despite actual knowledge of an extended pattern of grooming behavior and serious risk of sexual abuse, particularly after receiving Tucker Rother's October 23, 2021 email explicitly detailing Hunt's pattern of grooming students and his fear of potential physical abuse. Despite this knowledge and multiple subsequent reports, Thomas failed to implement enhanced supervision, investigate allegations, or remove Hunt from employment. Thomas's negligent retention directly enabled Hunt to continue victimizing students, including raping Devin Butts on May 1, 2025.

69.     From around December 2021 onwards, Northmont received multiple telephone calls from Bonnie Hill alleging that Hunt was raping students, which the employee(s) who received those calls dismissed, and on which no action appears to have been taken.

70.     As a direct and proximate result of these breaches, Plaintiffs have suffered damages in amounts to be proven at trial.

**COUNT 4**
**Failure to Report Under Ohio Revised Code § 2151.421**
**(Against Northmont and Employee Does I-V)**

71.     Plaintiffs incorporate all preceding allegations.

72.     Ohio Revised Code § 2151.421 requires persons in listed categories acting in an official or professional capacity to immediately report to law enforcement or children's services when they know or have reasonable cause to suspect child abuse or neglect. Under Ohio Revised Code 2151.011(B)(33), "person" is defined to include any political subdivision of the State of Ohio, such as Northmont.

73.     The categories of person listed in Ohio Revised Code § 2151.421(A)(1)(b) as having mandatory reporting obligations include school teachers, school employees, and school authorities.

74.     Northmont was at all relevant times a school authority. Employee Does I-V were at all relevant times school employees.

**Northmont's Knowledge and Failure to Report**

75.     From around December 2021 onwards, Bonnie Hill made multiple calls to Northmont explicitly stating Hunt was raping students. In February and May 2024, Bonnie Hill again called Northmont to report Hunt was raping students. Between 2019 and 2025, Northmont received numerous reports from multiple sources about Hunt's sexual abuse and other conduct giving reasonable cause to suspect that he posed a risk of injury to children. Northmont systematically failed to report many allegations as required by law, and thereby violated Ohio Revised Code § 2151.421.

76.     It is not yet known which employee(s) of Northmont received the calls from Bonnie Hill, or had knowledge of these calls and their contents, or of other reports that gave reasonable

18

cause to suspect that Hunt posed a threat of injury to Northmont's students. For this reason, those employees are named herein as Defendants Employee Does I-V.

77.     Upon information and belief, Employee Does I-V did not report the content of Bonnie Hill's statements made in the telephone calls they received from her, and any other reports they received concerning Hunt's conduct that gave reasonable cause to suspect that he posed a risk of injury to children, and thereby violated Ohio Revised Code § 2151.421.

**Willful and Reckless Conduct**

78.     Upon information and belief, the conduct of Employee Does I-V in failing to report the content of Bonnie Hill's statements made in the telephone calls they received from her, and any other reports they received concerning Hunt's conduct that gave reasonable cause to suspect that he posed a risk of injury to children was undertaken with malicious purpose, in bad faith, or in a wanton and reckless manner. The systematic failure to report the risk of child sexual abuse over six years demonstrates willful misconduct and conscious disregard for student welfare and statutory obligations.

79.     As a direct and proximate result, Hunt continued assaulting Plaintiffs for years after Northmont and certain of its employees had actual knowledge, causing damages in amounts to be proven at trial.

**COUNT 5**
**Assault and Battery**
**(Against Defendant Hunt)**

80.     Plaintiffs incorporate all preceding allegations.

81.     Hunt intentionally committed assault and battery against each Plaintiff by engaging in unwanted, offensive, and harmful sexual contact without consent, including rape, sexual battery, and other sexual abuse. On May 1, 2025, Hunt drugged and raped Butts at a campground in Lima.

A SANE exam on May 3, 2025 confirmed forensic evidence of rape. Hunt sexually assaulted Butts from March 2025 through May 1, 2025; Baker repeatedly while Baker was a student at Northmont High School; Paul repeatedly from November 21, 2014 through 2017; and Blouch on four occasions from October 2013 forward.

82.     Hunt's conduct was willful, wanton, malicious, and demonstrated reckless disregard for Plaintiffs' safety, warranting punitive damages. Plaintiffs have suffered and will continue to suffer severe psychological trauma, emotional distress, PTSD, depression, anxiety, medical and therapeutic expenses, pain and suffering, and loss of enjoyment of life, in amounts to be proven at trial.

**COUNT 6**
**Civil Liability for Criminal Acts Under Ohio Revised Code § 2307.60**
**(Against Defendant Hunt)**

83.      Plaintiffs incorporate all preceding allegations.

84.     Ohio Revised Code § 2307.60 provides a civil cause of action for anyone injured by a criminal act. Ohio Revised Code §§ 2907.02 and 2907.03 prohibit rape and sexual battery.

85.     Hunt committed rape in violation of § 2907.02 against each Plaintiff by engaging in sexual conduct through force, threat of force, or when Plaintiffs' ability to appraise or control Hunt's conduct was substantially impaired. On May 1, 2025, Hunt drugged and raped Devin Butts at a campground in Lima, Ohio. A SANE exam completed on May 3, 2025, at Miami Valley Hospital confirmed forensic evidence of rape. Hunt raped Baker on multiple occasions while Baker was a student at Northmont High School; raped Paul repeatedly from November 21, 2014, through 2017, beginning at the Dayton Masonic Temple; and raped Blouch on four separate occasions starting in 2013.

86. Hunt committed sexual battery in violation of § 2907.03 against each Plaintiff. At all relevant times, Hunt was a person in authority employed by Northmont while Plaintiffs were enrolled students. Hunt engaged in sexual conduct with each Plaintiff when he knew his position substantially impaired each Plaintiff's ability to appraise or control his conduct. Hunt used his position of authority to groom, manipulate, and coerce Plaintiffs into sexual conduct.

87. On July 30, 2025, the Montgomery County Grand Jury indicted Hunt on 82 criminal counts, including 17 counts of Rape, 39 counts of Sexual Battery by coercion, 25 counts of Sexual Battery by a person in authority, and one count of Unlawful Sexual Conduct with a Minor, all stemming from his conduct against Plaintiffs and other students.

88. Hunt's criminal conduct was willful, wanton, malicious, and demonstrated reckless disregard for Plaintiffs, warranting punitive damages. As a direct and proximate result, Plaintiffs have been damaged in amounts to be proven at trial.

**COUNT 7**
**Intentional Infliction of Emotional Distress**
**(Against Defendant Hunt)**

89. Plaintiffs incorporate all preceding allegations.

90. Hunt engaged in extreme and outrageous conduct that exceeded all bounds of decency and is regarded as atrocious and utterly intolerable in a civilized community: systematically grooming vulnerable minors through his position of authority; using employment offers to isolate students and facilitate exploitation; cultivating trust and dependency relationships to sexually exploit minors; repeatedly raping and sexually assaulting Plaintiffs over years; drugging and raping Plaintiff Butts; and demonstrating a calculated, sustained pattern of exploitation. Hunt intended to cause, or recklessly disregarded the probability of causing, severe emotional distress.

91.     As a direct result, Plaintiffs have suffered and continue to suffer severe emotional distress, including psychological trauma, PTSD, depression, anxiety, fear, humiliation, loss of self-esteem, difficulty trusting others, disruption of normal development, and other lasting harm of such substantial quality that no reasonable person should be expected to endure it. The distress has manifested in physical symptoms and significantly interfered with Plaintiffs' ability to function daily, attend school, maintain relationships, and engage in normal activities.

92.     Hunt's conduct warrants punitive damages. Plaintiffs have been damaged in amounts to be proven at trial.

### COUNT 8
### Negligent Infliction of Emotional Distress
### (Against Northmont, Zatik, and Thomas)

93.     Plaintiffs incorporate all preceding allegations.

94.     Governmental immunity does not apply, for the same reasons set forth in Count 3. Defendants owed Plaintiffs, as enrolled students, a duty of care to protect them from foreseeable harm, including harm from employees with documented histories of inappropriate conduct with minors.

95.     Defendants breached their duties by: hiring Hunt without adequate background checks that would have revealed his 2009 forced resignation and documented inappropriate sexual conduct; hiring Hunt despite readily available information about his pattern of misconduct at multiple districts; failing to supervise Hunt despite his documented history; ignoring and failing to investigate multiple credible reports from 2019-2025 that Hunt was sexually abusing students; failing to remove Hunt from student contact or place him on leave despite explicit reports; failing to report to law enforcement despite receiving direct reports; allowing Hunt unrestricted access until his May 5, 2025 arrest; and failing to train employees on grooming recognition and mandatory

reporting. These breaches were negligent and reckless. The harm was reasonably foreseeable at all times.

96.     Defendants had actual knowledge of Hunt's pattern of grooming behavior and that he posed a serious risk of physical sexual abuse to students no later than October 23, 2021, yet deliberately chose not to act, demonstrating conscious disregard for foreseeable severe emotional harm. Plaintiffs have suffered severe emotional distress, including psychological trauma, PTSD, depression, anxiety, fear, betrayal by trusted adults and institutions, loss of faith in authority, difficulty trusting others, and other lasting harm severe enough to significantly disrupt Plaintiffs' daily lives, education, relationships, and normal development.

97.     Defendants' acts and failures were performed in a wanton and reckless manner, demonstrating conscious disregard for Plaintiffs' rights and safety, worthy of substantial sanction to punish and deter such conduct. Plaintiffs have been damaged in amounts to be proven at trial.

**WHEREFORE**, Plaintiffs demand judgment against Defendants for:

A.     Compensatory damages, jointly and severally, in an amount that will fully and fairly compensate Plaintiffs for all of their injuries and damages, past, present, and future, including but not limited to:

- Physical injuries and pain and suffering;

- Severe psychological trauma and emotional distress;

- Medical, therapeutic, and counseling expenses;

- Loss of enjoyment of life;

- Any other damages proven at trial.

B.     Punitive damages against Defendants Hunt, Thomas, Zatik, and Employee Does I-V, individually, in an amount sufficient to punish their deliberate indifference, willful misconduct,

reckless disregard for student safety, extreme and outrageous conduct, and to deter similar conduct in the future;

      C.     Injunctive relief requiring Defendant Northmont City Schools to:

- Implement comprehensive policies and procedures for conducting thorough background checks on all employees who have contact with students;

- Implement mandatory training for all employees on recognition of grooming behaviors, warning signs of child sexual abuse, and appropriate boundaries with students;

- Implement mandatory training for all employees and administrators on their obligations under Ohio Revised Code § 2151.421 to report suspected child abuse;

- Establish clear protocols for investigating and responding to reports of employee misconduct with students.

      D.     Court costs and reasonable attorneys' fees pursuant to Title IX, Section 1983, and other applicable law.

      E.     Pre-judgment and post-judgment interest as allowed by law; and

      F.     Any such other further relief as the Court might find appropriate and just.

## JURY DEMAND

Plaintiffs hereby demand trial by jury of all issues so triable herein.

                     Respectfully submitted,

                     */s/ Terence R. Coates*
                     Terence R. Coates (0085579)
                     Justin C. Walker (0080001)
                     Jonathan T. Deters (0093976)
                     MARKOVITS, STOCK & DEMARCO, LLC
                     119 East Court Street, Suite 530

Cincinnati, Ohio 45202
Telephone: (513) 651-3700
Facsimile: (513) 665-0219
tcoates@msdlegal.com
jwalker@msdlegal.com
jdeters@msdlegal.com

Matthew E. Wiseman (0092343)
Nicholas A. Klingensmith (0084840)
John D. Treleven (0083236)
Celia Klug Weingartner (0097959)
TRELEVEN & KLINGENSMITH, LLC
4000 Smith Road, Ste. 220
Cincinnati, Ohio 45209
Telephone: (513) 999-5297
Facsimile: (513) 436-1544
matt@tkcincinnati.com
nick@tkcincinnati.com
john@tkcincinnati.com
celia@tkcincinnati.com

*Attorneys for Plaintiffs*